ALLEN H. PRUYN V. STATE OF NEBRASKA.

FILED FEBRUARY 25, 1913.   No. 17,547.

1. Criminal Law: INSTRUCTIONS: REVIEW.  One cannot predicate error upon an instruction when he has requested the court to instruct the jury substantially to the same effect.

2. ———: EVIDENCE: REVIEW.  Where the evidence in a criminal case is conflicting, but the testimony on behalf of the state, if believed by the jury, is amply sufficient to sustain a conviction, this court will not interfere.

3. Homicide: SUFFICIENCY OF EVIDENCE.  Evidence examined, and held to sustain the verdict.

ERROR to the district court for Dodge county: CONRAD HOLLENBECK, JUDGE. Affirmed.

F. Dolezal and A. S. Ritchie, for plaintiff in error.

Grant G. Martin, Attorney General, Frank E. Edgerton and George L. Loomis, contra.

LETTON, J.

The plaintiff in error, who will hereafter be denominated defendant, was charged with the crime of murder in the first degree. He pleaded not guilty, and was found by the jury guilty of the crime of manslaughter. From a judgment on this verdict he prosecutes error.

The errors complained of all relate to the giving or refusal of instructions, except that it is claimed that the evi-

dence fails to show that the defendant used excessive force in repelling an assault.

Patrick Gorey is a saloon-keeper in the town of North Bend. The deceased, Michael Gorey, was his brother. While Michael had no pecuniary interest in it, the evidence shows that he was often in the saloon, and sometimes assisted his brother in the business. The defendant is about 34 years of age, and was employed by his father, who was in the hay business, as foreman of a gang of men engaged in baling hay. On Christmas day, 1911, the day of the tragedy, the defendant went into the Gorey saloon for the purpose apparently of settling with his father for his own work and the work of some of the men. The father deducted some money from his wages and that of the men for some time which he claimed had been lost, and some loud, boisterous and profane language was used between them in this dispute. The father and son then walked toward the back end of the saloon near the stove, still disputing and using profane and vulgar language towards each other. Michael Gorey, the deceased, was standing behind the bar. At this time Patrick Gorey stepped over towards the defendant, and said: "Al., look here, we don't want you in here. We don't sell you at all, and please go out." This he refused to do. Michael Gorey then came from the west end of the bar, holding an automatic pistol in his hand. The testimony in behalf of the state tends to prove that the pistol was unloaded, rusty in the barrel, and that it had not been loaded for two years, and that Michael held the pistol at arms length, pointing to the floor as he walked towards the accused and his father, while there is evidence on the part of the defense tending to show that the pistol was partly raised and pointing towards the accused at that time. In the quarrel with his father, the accused made an uncomplimentary reference to the Goreys, which was heard by Patrick, but it does not appear that it was heard by the deceased. According to the witnesses for the state, Michael said to the accused, as he approached him, "No gun plays here today, you go out," and that the accused

then quickly passed around the stove, pulled out a revolver, and fired twice at the deceased, who was about 12 feet away. A fight then ensued between him and Patrick, in which the accused was knocked down and severely bruised by blows from the pistol which Patrick had taken away from him. The deceased lingered for two days, and then died from the result of his wounds. The evidence on the part of the accused is to the effect that as the deceased approached the accused he carried the pistol partly raised towards the accused, that he said to the accused: "Shoot now, I have got the gun." And it is argued that this language and the conduct of the deceased justified in the accused the belief that he was about to be assaulted with a deadly weapon, and that his action in shooting the deceased under the circumstances as they appeared to him was justified on the ground of self-defense. There is a dispute in the testimony as to the number of shots heard or that were fired. There is positive testimony on the part of the state that only three shots were fired, and that they were all from the accused's revolver, two of which penetrated the body of deceased, and one fired by Patrick Gorey into the wall after he obtained possession of the revolver. Several witnesses for the defendant who were in and about the saloon testify to hearing more than three shots, and the father of the accused testifies that he saw shots being fired from Michael Gorey's revolver.

In the endeavor to establish a higher grade of homicide, the state introduced evidence showing that the defendant while under the influence of liquor had quarreled with his father in the saloon about a year previously, and had been put out by the deceased, and at that time he had threatened "to go and get a gun and get all of them;" that in July or August, 1911, while in a state of intoxication, he made threatening remarks about the Goreys; that in November, 1911, when refused a drink in the saloon, he threatened to get even with the Goreys, and that about the same time he drew a pistol on Michael Gorey, using language of a nature to provoke an assault. It seems to be established that

there had not been the best of feeling between the defendant and the Goreys before the day of the homicide.

It is contended that the evidence is not sufficient to justify a conviction of manslaughter. This is true if the evidence on behalf of the accused is alone considered, but it is equally true that if the jury believed the testimony produced on behalf of the state a verdict of even a higher degree than manslaughter might have been sustained. In such a condition of the evidence, it is for the jury alone to determine the weight of the testimony, and the court is bound by their conclusion.

It is next contended that there is prejudicial error in the instructions given, and in the refusal of the court to give a number requested by defendant. Instructions 17 to 20, inclusive, it is said by counsel for the accused are taken almost verbatim from the case of *Carleton v. State,* 43 Neb. 373, and it is argued that there is such a wide difference between the cases that the instructions given are inapplicable. The principles of the law of self-defense as stated in these instructions are substantially sound. The defendant complains of the use of the expression in instruction 17, that, if defendant was assaulted in such a way as to induce in him "a reasonable and well-grounded belief" that he was in actual danger. In the same instruction the jury were told: "Actual or positive danger is not indispensable to justify self-defense. The law considers that, when men are threatened with danger, they are obliged to judge from appearances and determine therefrom as to the actual state of things surrounding them, and in such cases, if persons act from honest convictions induced by reasonable evidence, they will not be held responsible criminally for a mistake as to the extent of the actual danger." The defendant himself requested the court to instruct the jury that "if at the time he shot Mike Gorey he had reasonable cause to apprehend on the part of said Gorey a design to do him great personal injury, and there was reasonable cause for him to apprehend immediate danger," and that "at the time he did so he had

reasonable cause to believe it necessary for him to shoot the deceased." In another he requested the court to instruct that the important question was: "Were the circumstances such as to afford him (defendant) just and reasonable ground for believing himself to be in such danger." The distinction between the instruction requested conditioning the action of accused upon "just and reasonable ground for believing" and that given by the court making the condition "reasonable and well-grounded belief" is too fine for us to perceive, and the defendant cannot predicate error on a statement of law which in substance he requests the court to charge. The numerous instructions upon the ground of self-defense requested by the defendant, while perhaps not erroneous, were for the most part unnecessary, since the propositions therein contained applicable to the facts were for the most part given by the court to the jury upon its own motion. We are further of the opinion that the refusal to give the cautionary instruction No. 8 with reference to verbal declarations did not prejudice defendant. The testimony as to declarations on the day of the tragedy was given by witnesses both for the state and for the defendant, and it was for the jury to say by a comparison of all the evidence which of the witnesses were to be believed. As to declarations or threats made prior to the day of the tragedy, the verdict shows that the jury were not influenced thereby, or the verdict would have been for a graver crime.

Considering the whole charge of the court, as well as the instructions refused, we are unable to see that any error prejudicial to defendant was committed. On the other hand, the court would certainly have not been justified in giving the instructions requested by the defendant in addition to the 28 which were actually read to the jury. As a general proposition, no good purpose is served by attempting to make hairsplitting distinctions in a multitude of instructions qualifying each other to the confusion of the ordinary mind. The better practice is to make the charge clear and simple, and yet at the same time to cover

the law upon the essential points involved. This we think was done in this case.

We are unable to find from the record that the accused did not have a fair trial. The judgment of the district court is therefore

AFFIRMED.